PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAMONTE B. HOPINGS, JR., | ) | CASE NO. 3:08CV2202 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE PEARSON |
| BENNIE KELLY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

Before the Magistrate Judge is Lamonte B. Hopings, Jr.'s ("Hopings" or "Petitioner") petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] ECF No. 1.  Hopings is incarcerated at the Trumbull Correctional Institution serving a sentence of fifteen years to life imposed for a murder conviction, consecutive with a mandatory three-year term of incarceration for firearm specifications.  *See* http://www.drc.ohio.gov/ (website of the Ohio Department of Rehabilitation and Correction for current status of and basis for Hopings' incarceration).

Hopings raises three Grounds for Relief in his petition – he contends that he is entitled to the writ because: (One) the trial court failed to properly instruct the jury, (Two) the trial court erred in overruling his objection to the discriminatory use of the prosecution's peremptory challenges, and (Three) the trial court erred by allowing a police officer to testify as an expert witness.  ECF No. 1 at 5-8.  Warden Kelly ("Respondent") acknowledges having custody of

---

[1]  Pursuant to Local Rule 72.2, this matter was referred to the undersigned Magistrate Judge for the preparation of a Report and Recommendation.  *See* ECF No. 3.

(3:08CV2202)

Hopings as a result of his conviction but asserts that Grounds One and Three of Hopings' petition

should be dismissed as not cognizable and procedurally defaulted, and Ground Two should be

denied on its merits.  ECF No. 10.  In his response, Hopings maintains that his petition is

cognizable, has merit, and is not procedurally defaulted.  ECF No. 19.

Having reviewed the record and applicable law, the Court finds that Grounds One and

Three are not cognizable and procedurally defaulted and that Ground Two lacks merit.

Accordingly, the undersigned Magistrate Judge recommends dismissing Hopings' habeas corpus

petition in its entirety with prejudice, for the reasons provided below.

## I.  **Factual and Procedural History**

### A.  **Underlying Offense, Trial, and Sentencing**

The Lucas County Court of Appeals, Sixth Appellate District ("State Court of Appeals")

reviewed Hopings' case on direct appeal and determined the facts to be as follows:[2]

> Defendant-appellant, Lamonte Hopings, appeals the March 31, 2005 judgment of the Lucas County Court of Common Pleas which, following a jury trial convicting appellant of murder, sentenced appellant to a term of 15 years to life in prison with an additional mandatory three year-term for the gun specification.  For the reasons that follow, we affirm the trial court's decision.
>
> On May 28, 2004, appellant was indicted on one count of aggravated murder, R.C. 2903.01(A), with a gun specification, for the May 19, 2004 shooting death of Robert Badgett.  Appellant entered a not guilty plea.
>
> On March 21, 2005, the jury trial in this matter commenced.
>
> . . . .

_____

[2]  Facts found by the state appeals court on its review of the trial record are presumed correct by a federal court reviewing a petition for a writ of habeas corpus.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

(3:08CV2202)

Following the presentation of testimony and exhibits, the jury found appellant guilty of murder with a gun specification.  This appeal followed.

ECF No. 10-1 at 72-72, 80 (Ex. 9).  The trial court sentenced Hopings on March 31, 2005.[3]  ECF No. 10-1 at 11-12 (Ex. 5).

**B.  Direct Appeal**

On April 27, 2005, Hopings, through counsel, filed a timely notice of appeal in the State Court of Appeals.  ECF No. 10-1 at 161 (Ex. 14).  Hopings presented three assignments of error in his brief filed on January 20, 2006:

I.    The trial court erred in failing to properly instruct the jury under Ohio law that one acting in self-defense possesses no duty to retreat from his home.

II.    The verdict is against the manifest weight of the evidence.

III.    The trial court erred in overruling appellant's objection to the discriminatory use of the prosecution's peremptory challenge.

ECF No. 10-1 at 16 (Ex. 6).  Hopings filed an amended brief, through counsel, on April 10, 2006, wherein he presented the following additional assignment of error:

IV.    It was error to allow Gerald Schriefer to testify as an expert witness.

ECF No. 10-1 at 35 (Ex. 7).   On February 2, 2007, the State Court of Appeals denied the appeal on the merits, thereby affirming the judgment of the trial court.  ECF No. 10-1 at 73 (Ex. 9).

Hopings, now *pro se*, filed a timely appeal to the Supreme Court of Ohio on March 13, 2007.  ECF No. 10-1 at 89 (Ex. 10).  Hopings presented four propositions of law:

---

[3]  The county clerk's office journalized Hopings' sentence the same day, March 31, 2005. ECF No. 10-1 at 11-12 (Ex. 5).

(3:08CV2202)

> Proposition of Law No. 1:  The trial court erred in failing to properly instruct the jury under Ohio Law that one Acting In self-defense possesses no duty to retreat from his home.
>
> Proposition of Law No. II:  The verdict was against the manifest weight of the evidence.
>
> Proposition of Law No. III:  The trial court erred in overruling Appellant's objection to the discriminatory use of The Prosecution's peremptory challenges.
>
> Proposition of Law No. IV:  It was error to allow Gerald Schriefer to testify as an expert.

ECF No. 10-1 at 90 (Ex. 10).[4]  On June 20, 2007, the Supreme Court of Ohio denied leave to

appeal and dismissed Hopings' appeal "as not involving any substantial constitutional question."

ECF No. 10-1 at 140 (Ex. 12).  Hopings did not appeal this decision to the United States

Supreme Court.

### C.  Federal Habeas Petition

Continuing *pro se*, Hopings filed his petition for a writ of habeas corpus on September

16, 2008, presenting three grounds for relief:[5]

> GROUND ONE:  The Trial Court Erred In Failing To Properly Instruct The Jury Under Ohio Law That One Acting In Self-Defense Possesses No Duty To Retreat From His Home.
>
> GROUND TWO:  The Trial Court Erred In Overruling Appellants Objection to The Discriminatory Use Of The Prosecutions Peremptory Challenges.
>
> GROUND THREE:  It Was Error To Allow Gerald Schriefer To Testify As An

---

[4]  Hopings' propositions of law are reprinted herein exactly as written in his brief to the Supreme Court of Ohio.

[5]  Respondent's Return of Writ incorrectly states that Hopings filed his petition "through counsel."  *See* ECF No. 10 at 7.

(3:08CV2202)

Expert Witness.

ECF No. 1 at 5-8.[6]  Respondent contends that Grounds One and Three are not cognizable in a

federal habeas corpus proceeding in addition to being procedurally defaulted.  Ground Two

passes procedural muster, but Respondent contends that it should be denied on the merits.  ECF

No. 10.  In his traverse, Hopings argues that his grounds for relief are properly filed "by

presenting them in the proper format to this Honorable court" and that his "Due Process rights

were violated throughout [his] trial due to the fundamental miscarriage of justice of the State

Court."  ECF No. 19 at 2.  Hopings has not requested an evidentiary hearing.[7]

## II.  Procedural Gateways to Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed

procedural rules designed to permit federal judicial resources to focus on only the most

compelling habeas corpus petitions.  Under AEDPA, a petitioner must successfully pass through

several procedural gateways to qualify for federal review.  Those gateways and their application

to the instant petition are provided below.

### A.  Jurisdiction

Writs of habeas corpus may be granted by a district court within its respective

jurisdiction:

Where an application for a writ of habeas corpus is made by a person in custody
under the judgment and sentence of a State court which contains two or more Federal

---

[6] Hopings grounds for relief are written exactly as presented in his petition.

[7] Hopings filed a motion for appointment of counsel, ECF No. 15, which this Court
denied on April 3, 2009.  ECF No. 16.

(3:08CV2202)

> judicial districts, the application may be filed in the district court for the district
> within which the State court was held which convicted and sentenced him and each
> of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Hopings was convicted in the Court of Common Pleas in Lucas County, Ohio, which is

within the Northern District of Ohio.  This Court, therefore, has jurisdiction over Hopings'

petition.

### B.  Statute of Limitations

AEDPA imposes a one-year statute of limitations period for federal habeas petitions filed

by prisoners challenging state-court convictions after its April 24, 1996 effective date.  28 U.S.C.

§ 2244(d); *McCray v. Vasbinder,* 499 F.3d 568, 571 (6th Cir. 2007).  The one-year period begins

to run on the date judgment became final.  28 U.S.C. § 2244(d)(1); *Jimenez v. Quarterman*, 129

S.Ct. 681, 685-86 (2009).  As this one-year period is not a jurisdictional bar, a petitioner may

have an untimely petition reviewed if the petitioner establishes that the doctrine of equitable

tolling applies.  *Dunlap v. United States*, 250 F.3d 1001, 1003 (6th Cir. 2001).

Respondent has not asserted that Hopings' petition is time-barred.  Upon independent

review of the record, the undersigned Magistrate Judge finds that Hopings' petition is timely

filed pursuant to 28 U.S.C. § 2244(d).

### C.  Evidentiary Hearing

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances

when the factual basis of a claim has not been adequately developed in state court proceedings.

28 U.S.C. § 2254(e)(2).  The determination of whether to hold an evidentiary hearing is within

(3:08CV2202)

the federal court's discretion. *Vroman v. Brigano*, 346 F.3d. 598, 606 (6th Cir. 2003). Neither

Petitioner nor Respondent has requested an evidentiary hearing.

Hopings' claims involve legal issues that can be resolved without additional factual

inquiry. Under these circumstances, the undersigned finds there is no need for an evidentiary

hearing in the instant case.

### D.  Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all available state remedies or have no

remaining state remedies available before a federal court will review a petition for a writ of

habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004);

*Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief

remain available, then the petitioner has not exhausted all of his state remedies. *Rust v. Zent*, 17

F3d 155, 160 (6th Cir. 1994). If relief is no longer available in state court, however, exhaustion

can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented

to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether

cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v.

Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir.

2001). The exhaustion requirement is properly satisfied when the highest court in the state in

which petitioner was convicted has been given a full and fair opportunity to rule on all the

petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Hopings has no remaining state remedies for his claims, therefore, his claims have been

fully exhausted.

(3:08CV2202)

### E.  Cognizable Claims

Federal courts have limited subject matter jurisdiction over actions arising from state

court decisions.  In order for a federal court to have subject matter jurisdiction over a habeas

petition seeking review of a state prisoner's conviction, two prerequisites must be met.  First, the

petitioner must be in state custody at the time the habeas petition is filed.  U.S.C. § 2254(a).

Second, the habeas petition must present a federal question, meaning, the prisoner must

challenge the legality of the custody on the ground that it was imposed in "violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a).  Federal

courts may not issue a writ of habeas corpus based solely upon an error of state law.  *Lewis v.

Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (per curiam)  ( "A

federal court may not issue the writ on the basis of a perceived error of state law.")  In fact, the

Sixth Circuit has upheld the dismissal of claims based solely on technical errors of state law as

opposed to violations of constitutional law.  *See e.g.*, *Frazier v. Hoffman*, 343 F.3d 780, 789 (6th

Cir. 2003)*, supplemented*, 348 F.3d 174 (6th Cir. 2003) (denying habeas review based upon

"technical correctness of [state court's] evidentiary rulings" as opposed to a constitutional ground

such as due process); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991) (finding that

district court erred in granting habeas corpus relief on ground the plea colloquy failed to conform

to state rules; "district court's sole inquiry should have been . . . whether . . . [the] guilty plea

comported with the protections of due process").

Rulings by the state's highest court on matters of state law are binding on federal courts.

*Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  This deference prohibits a federal court from

-8-

(3:08CV2202)

second-guessing a state court's interpretation of its own procedural rules.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).  Even if a state court errs in applying its own procedural default statute, the error is not cognizable in federal habeas review.  *Simpson v. Jones*, 238 F.3d 399, 406-07 (6th Cir. 2000).

Based on the following analysis, Grounds One and Three of Hopings' petition for habeas corpus relief are not cognizable, *i.e.*, not capable of being judicially examined in a federal habeas petition.

### F.  Procedural Default

Procedural default occurs when a petitioner fails to present his constitutional claims fairly to the highest state court in a federal constitutional context.  *See Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971).  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner:

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v Thompson*, 501 U.S. 722, 750 (1991).

Grounds One and Three of Hopings' petition for habeas corpus relief are procedurally defaulted, as discussed in greater detail below.

(3:08CV2202)

## III.  Hopings' Procedural Frailties

### A.  Grounds One and Three are Not Cognizable in a Federal Habeas Petition

A federal court reviewing a petition for habeas corpus is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  An exception may be made if the state law error is so egregious as to amount to a denial of fundamental fairness or of other federal rights.  *See id.*

#### 1.  Ground One

In Ground One, Hopings argues that he was denied "his right to a meaningful opportunity to present a complete defense" when the trial court refused to instruct the jury that he had "no duty to retreat" in support of his defense of self-defense.  ECF Nos. 1 at 5 & 19 at 2.

The State Court of Appeals decided the claim on the merits, holding as follows:

> In his first assignment of error, appellant disputes the trial court's refusal to properly instruct the jury that because appellant was in his home and acting in self-defense, he had no duty to retreat.  A trial court is required to give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and fulfill its duty as the factfinder.  *State v. Comen* (1990), 50 Ohio St.3d 206, 210, 553 N.E.2d 640.  A court may refuse to give an instruction that is not applicable to the evidence in the case, or which is incorrect. *State v. Cross* (1979), 58 Ohio St.2d 482, 488, 91 N.E.2d 319.  A reviewing court will not reverse the trial court's decision relating to whether sufficient facts existed to support a jury instruction absent an abuse of discretion.  *State v. Endicott* (1994), 99 Ohio App.3d 688, 693, 651 N.E.2d 1024.

> In order to establish the affirmative defense of self-defense, appellant would have to have shown that he was not at fault in creating the situation; that he had a bona fide belief that he was in imminent danger of death or great bodily harm with his only means of escape being through the use of force; and that he did not violate a duty to retreat or avoid the danger.  *See State v. Thomas*, 77 Ohio St.3d 323, 1997 Ohio 269,

-10-

(3:08CV2202)

> 673 N.E.2d 1339.

> While the court gave the self-defense jury instruction, the trial court denied appellant's request to include the "no duty to retreat" instruction based mainly on its conclusion that appellant was in a common area of the duplex rather than in the apartment.  In *State v. Frazier* (Dec. 22, 1989), 6th Dist. No. L-89-017, 1989 Ohio App. LEXIS 4741, a case relied on by the state, this court concluded that the appellant, who stabbed her ex-boyfriend in the hallway of an apartment building, had a duty to retreat into her apartment before using deadly force.

> In his merit brief, appellant states that at the time of the shooting he was inside the front door of the house.  Even assuming this [sic] that was true, inside the front door of the house was a common hallway which led to appellant's mother's apartment and to the upstairs apartment.  Accordingly, as in *Frazier*, the trial court did not abuse its discretion when it refused to give the "no duty to retreat" instruction.

ECF No. 10-1 at 80-82 (Ex. 9).

In *Estelle*, the Supreme Court "reemphasize[d] that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.  In the instant case, the State Court of Appeals held that the trial court did not commit error or "abuse its discretion when it refused to give the 'no duty to retreat' instruction" to Hopings' jury.  ECF No. 10-1 at 82 (Ex. 9).  The Sixth Circuit has recognized that when "the Ohio Court of Appeals found that [the jury] instruction accurately reflected Ohio law . . . it is not for this court to question the state court's interpretation of its own law."  *Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000) (finding that the "no duty to retreat" instruction is a matter of state law to be interpreted by the state court); *see also Davis v. Morgan*, 89 Fed. Appx. 932, 937 (6th Cir. 2003) (relying on the rationale of *Seymour*'s holding and acknowledging that the federal court is bound to accept a state court's finding that jury instructions were proper).

At the threshold, the undersigned finds no error in the state court's application of Ohio's

(3:08CV2202)

law on self-defense in Hopings' case.  And, even if the undersigned had found error with the

state court's application, it is not within the province of this Court to question the state court's

interpretation of its own law.  Further, despite Hopings' contrary contentions, there is no

constitutional guarantee to have this affirmative defense applied in the manner Hopings claims it

should be and no resultant denial of fundamental fairness or of other federal rights.

Accordingly, Ground One should be dismissed.

### 2.  **Ground Three**

In Ground Three, Hopings argues the trial court violated his due process rights when it

allowed Gerald Schriefer, a police officer assigned to the "Scientific Investigation Unit," to

testify as an expert.  ECF Nos. 1 at 8 & 19 at 3-4.

The State Court of Appeals decided the claim on the merits, holding as follows:

> In appellant's fourth and final assignment of error, he argues that it was error for the
> trial court to allow Officer Gerald Schriefer to testify as an expert witness.  In
> particular, appellant argues that Officer Schriefer was not qualified to testify about
> blood interpretation. [footnote containing text of Ohio Rule of Evidence 702 omitted]
> A trial court's determination of the qualifications of an expert witness to testify is
> within its sound discretion and will not be reversed absent an abuse of that discretion.
> *State v. Awkal*, 76 Ohio St.3d 324, 331, 1996-Ohio-395; *State v. Bidinost*, 71 Ohio
> St.3d 449, 453, 1994-Ohio-465.  An abuse of discretion is more than an error of law
> or judgment, the term connotes an attitude by the court that is arbitrary, unreasonable,
> or unconscionable.  *State v. Adams* (1980), 62 Ohio St.2d 151, 157-158.
>
> Regarding his qualifications, Officer Schriefer testified that he had been with the
> Toledo Police Department for 19 years; the SIU for 8 years.  Officer Schriefer
> testified that he attended blood interpretation training for a "little bit over a week;"
> Schriefer also stated that he spent two weeks in general evidence training.  Finally,
> Schriefer testified that at a crime scene his job is to recognize, collect, and preserve
> evidence.  Finding Schriefer's testimony admissible, the court noted:
>
> > "He's rendering an opinion based on his observations, additionally as
> > to the trajectory, and what he's referred to as blow back, and the

(3:08CV2202)

> blood, and the pattern of the blood.  We find that sufficient evidence
> has been presented for his opinion to get to the jury.  And they are
> also given an instruction relative to credibility of the witness and the
> weight to be given to it, even relating to experts."

> Although Officer Schriefer stated that he did not consider himself an "expert," his
> testimony clearly demonstrated that he has specialized knowledge of blood
> interpretation.  Further, Officer Schriefer's opinion was based upon his personal
> observations at the crime scene.  See. [sic] Evid.R. 703.  Moreover, we agree with
> the state that even assuming that the trial court erroneously permitted Officer
> Schriefer to testify as an expert, his testimony was admissible under Evid.R. 701.

> Based on the foregoing, we find that the trial court did not abuse its discretion when
> it allowed Officer Schriefer's testimony.  Appellant's fourth assignment of error is
> not well-taken.

ECF No. 10-1 at 85-87 (Ex. 9).

Hopings claims the trial court violated his right to due process, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Rule of Evidence 702.[8]  *See* ECF No. 19 at 4.  United States Supreme Court and Sixth Circuit precedent hold that issues of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle*, 502 U.S. at 67-68; *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967); *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005); *Bugh v. Mitchell*, 329 F.3d 446, 453 (6th Cir. 2003); *Buell v. Mitchell*, 274 F.3d 337, 357 (6th Cir. 2001); *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir.1985); *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir.1976).  Hopings' claim that the trial court allowed Officer Schriefer to testify as an

---

[8]  Hopings generally refers to "Rules of Evidence" and, when referencing *Daubert*, refers to the"Federal Rule of Evidence 702."  The Court acknowledges that both Ohio's and the federal Rule of Evidence 702 provide guidance regarding the use of expert, or specialized knowledge testimony.  The failure of Hopings third ground for relief hinges on his failure to raise a constitutional claim in Ground Three of his federal habeas petition, not his inability to distinguish federal and state evidentiary rules.

-13-

(3:08CV2202)

expert witness challenges only a state law evidentiary issue. Hopings has failed to state a claim

upon which habeas corpus relief may be granted because he merely stated a "due process"

violation occurred without further elaboration and because his argument is based upon state

evidentiary law.[9] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Danner v. Motley*, 448 F.3d 372,

375-76 (6th Cir. 2006). Accordingly, had the trial court allowed Officer Schriefer's testimony in

error, this type of state law evidentiary error is not cognizable on federal habeas review and

should be dismissed.

### B. Grounds One and Three are also Procedurally Defaulted[10]

In order to properly exhaust available state remedies, a petitioner must first fairly present

the substance of his federal habeas corpus claims in a constitutional context to the state courts.

*See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

"The state courts must be provided with a 'fair opportunity' to apply controlling legal principles

to the facts bearing upon petitioner's constitutional claims." *Sampson v. Love*, 782 F.2d 53, 55

(6th Cir. 1986). To determine whether a claim has been "fairly presented," a court examines

whether the petitioner: "(1) reli[ed] upon federal cases employing constitutional analysis; (2)

reli[ed] upon state cases employing federal constitutional analysis; (3) phras[ed] the claim in

terms of constitutional law or in terms sufficiently particular to allege a denial of a specific

---

[9] The undersigned's independent review of the record also does not reveal any denial or abridgment of Hopings' right of due process.

[10] One procedural error is sufficient to preclude review of a ground for relief in a federal habeas petition. Hopings' Grounds One and Three each suffer from two separate procedural errors. The second error, procedural default, is explained below in a effort to provide a complete analysis of the petition.

-14-

(3:08CV2202)

constitutional right; or (4) alleg[ed] facts well within the mainstream of constitutional law."

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (*citing Franklin v. Rose*, 811 F.2d 322,

326 (6th Cir. 1987)).  In *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), the Supreme Court explained:

> A litigant wishing to raise a federal issue can easily indicate the federal law
> basis for his claim in a state-court petition or brief, for example, by citing in
> conjunction with the claim the federal source of law on which he relies or a
> case deciding such a claim on federal grounds, or by simply labeling the
> claim "federal."

However, "[g]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not

'fairly present' claims that specific constitutional rights were violated." *McMeans*, 228 F.3d at

681.

### 1. Ground One

Hopings did not fairly present the claim asserted in Ground One in a constitutional

context to the state court — the trial court failed to properly instruct the jury.  In his brief to the

State Court of Appeals, Hopings asserted that the "erroneous instruction denied [him] his right to

a meaningful opportunity to present a complete defense guaranteed under Section 16, Article I of

the Ohio Constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States

constitution [sic]."  ECF No. 10-1 at 40 (Ex. 7).  Apart from the fleeting mention of the United

States Constitution in the first sentence of his argument, his direct appeal brief did not employ

any federal case law, constitutional analysis, or the denial of a specific constitutional right.

Hopings framed his argument squarely in terms of violations of Ohio case law.  ECF No.10-1 at

40 (Ex. 7).  He cited one Ohio Supreme Court case that sets forth the elements of Ohio's defense

of self-defense and discusses the "no duty to retreat" rule without citing to, or relying on, any

(3:08CV2202)

federal cases discussing the abridgement of a federal constitutional right.[11]  ECF No.10-1 at 40

(Ex. 7) (*citing State of Ohio v. Williford*, 49 Ohio St.3d 247, 551 N.E.2d 1279 (Ohio 1990)).

Because Hopings did not present Ground One in a constitutional context to the Ohio State

courts, this Ground for Relief is procedurally defaulted.

### 2.  **Ground Three**

Hopings did not fairly present the claim asserted in Ground Three in a constitutional

context to the state court.  Unlike the argument Hopings presented to the State Court of Appeals

for Ground One wherein he at least mentioned (without expounding upon) the United States

Constitution, Hopings did not provide even the slightest mention of the United States

Constitution in his state appellate argument for Ground Three, or federal case law or

constitutional analysis.  Hopings argued only that the trial court abused its discretion and

committed error based on Ohio Rule of Evidence 702.  ECF No. 10-1 at 50 (Ex. 7).  Accordingly,

Ground Three is procedurally defaulted.[12]

---

[11]  Hopings' brief to the Supreme Court of Ohio included the same argument as asserted in his brief to the State Court of Appeals with an additional paragraph citing two State of Ohio cases.  Neither of these additional cases cure the procedural default of Ground One, nor could they.  Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it was first presented in the court below.  *State v. Jester*, 32 Ohio St.3d 147, 154, 512 N.E.2d 962 (1987).  It is therefore unlikely that the Ohio Supreme Court would reach the merits of a claim that had not been properly raised in an underlying appellate proceeding.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996)* (applying the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar").

[12]  While Hopings' brief to the Supreme Court of Ohio regarding the claim in Ground Three contains constitutional arguments and federal case law in support thereof, Ground Three remains procedurally defaulted because a criminal constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented in a lower state court.  *See*

(3:08CV2202)

In sum, Grounds One and Two are not reviewable on a federal habeas due to the procedural errors described above.  Therefore, the undersigned will not conduct a merit review of either of those defaulted state law issues.  Ground Two, however, does demand a review on the merits.  It follows.

### IV.   Merit Review of Ground Two

In Ground Two, Hopings claims that the "trial court erred in overruling [his] objection to the discriminatory use of the prosecutions peremptory challenges."  ECF Nos. 1 at 7 & 19 at 3. Other than stating that this claim violates his "Fourteenth Amendment of Due Process," ECF No. 1 at 7, Hopings does not further elaborate on this argument in his petition or traverse.  While construing Hopings' claim in the most liberal light, the undersigned also looked to his state appellate and state supreme court briefs in order to determine the details of Hopings' argument in Ground Two.  In his state appellate brief, which provides the Court a more cogent argument than his state supreme court brief, Hopings' claimed violation of equal protection is premised on *Batson v. Kentucky*, 476 U.S. 79 (1986).  *See* ECF No. 10-1 at 49  (Ex. 7).  Hopings alleges that the prosecutor purposefully struck Juror No. 2 and Juror No. 5 because they were African-American like Hopings.  The Court employs the following standards of review in its analysis of Ground Two.

### A.   AEDPA Standard of Review

If a petitioner's claims overcome the procedural barriers of time limitation, exhaustion, cognizability, and procedural default, then AEDPA governs the Court's review of a habeas

---

*supra* note 11.

-17-

(3:08CV2202)

corpus petition.  The Antiterrorism and Effective Death Penalty Act of 1996 altered the standard

of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.

As amended, 28 U.S.C. § 2254(d) provides:

> An application for writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State court
> proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the

state court's decision is contrary to, or involved an unreasonable application of, clearly

established federal law, or resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v.

Taylor*, 529 U.S. 362, 379-413 (2000).  Law is "clearly established" only by holdings of the

Supreme Court, not its dicta, and the law must be clearly established at the time of the

petitioner's conviction.  *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable

application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in state
> court.  Under the statute, a federal court may grant a writ of habeas corpus if the
> relevant state-court decision was either (1) "*contrary to* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "*involved an unreasonable application of* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to"

-18-

(3:08CV2202)

clearly established federal law if it reaches a conclusion opposite to that reached by Supreme

Court holdings on a similar question of law or if it faces a set of facts materially indistinguishable

from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A

decision involves an unreasonable application of federal law only if the deciding court correctly

identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.

*Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct

legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.  "The

central inquiry is whether the state court decision was objectively unreasonable and not simply

erroneous or incorrect."  *Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008).  Therefore, "a

reviewing court must be careful not to substitute its own judgment for that of the state court by

equating the more stringent standard of 'objectively unreasonable' with the more lax standard of

'clear error.'"  *Id.*

     "[A] determination of a factual issue made by a State court shall be presumed to be

correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of

correctness by clear and convincing evidence."  *Id.*  "[A] decision adjudicated on the merits in a

state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding."

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

    **B.  *Batson* Standard of Review**

    In *Braxton v. Gansheimer*, 561 F.3d 453 (6th Cir. 2009), the Sixth Circuit, in detailed

fashion, set forth as follows the appropriate standard of review for a petitioner's claim that a state

(3:08CV2202)

prosecutor discriminated on the basis of race in challenging potential jurors:

> Braxton's *Batson* claim presents a mixed question of law and fact and "necessarily focuses on the reasonableness of the decisions of the state courts-that is, whether those decisions constituted an unreasonable application of Supreme Court precedent." *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.2003). *See also Railey v. Webb*, 540 F.3d 393, 397 (6th Cir.2008) ("Mixed questions of law and fact are reviewed under the 'unreasonable application' prong of the AEDPA."). However, "the question of 'whether a prosecutor intended to discriminate on the basis of race in challenging potential jurors is, as *Batson* recognized, a question of historical fact.' " *Lancaster*, 324 F.3d at 429 (quoting *Hernandez v. New York*, 500 U.S. 352, 367, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). "Under AEDPA, primary or historical facts found by state courts are presumed correct and are rebuttable only by clear and convincing evidence." *Id.* at 429 (citations and internal quotation marks omitted). Thus, while a district court's ruling on a *Batson* claim presented on direct appeal is entitled to great deference and should not be disturbed unless it is clearly erroneous, "the standard must be modified in the context of a § 2254 petition to give credence to § 2254(e)(1)'s requirement that facts found by a state court be presumed correct unless the petitioner rebuts this presumption by clear and convincing evidence." *Id.* at 429 n. 1.

> The Equal Protection Clause precludes a party from using a peremptory challenge to exclude members of the jury venire on account of their race. *Batson*, 476 U.S. at 89, 106 S.Ct. 1712. *Batson* involves a tripartite burden-shifting inquiry. *Hernandez*, 500 U.S. at 358, 111 S.Ct. 1859. First, the party opposing the peremptory challenge must make a prima facie showing of racial discrimination. *Id.* If such a case is established, the burden shifts to the defending party to articulate a race-neutral explanation for striking the juror in question. *Id.* at 358-59, 111 S.Ct. 1859. The party's reason for its decision to dismiss a juror is "neutral" if "it is based on something other than the race of the juror" and, absent "discriminatory intent inherent in the explanation," the reason should be deemed race-neutral. *United States v. Jackson*, 347 F.3d 598, 606 (6th Cir.2003). "This non-racial explanation 'need not be particularly persuasive, or even plausible, so long as it is neutral.' " *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir.2001), overruled in part on other grounds by *Barnes v. Wright*, 449 F.3d 709, 718-20 (6th Cir.2006) (quoting *United States v. Harris*, 192 F.3d 580, 586 (6th Cir.1999)). "[B]ody language and demeanor are permissible race-neutral justifications for the exercise of a peremptory [challenge]." *McCurdy*, 240 F.3d at 521 (citing *United States v. Changco*, 1 F.3d 837, 840 (9th Cir.1993)); *see also United States v. Forrest*, 402 F.3d 678, 687 (6th Cir.2005) (holding that the prosecution's articulated reason for exercising a peremptory challenge-the juror's "extreme negative reaction" to being called for jury duty-was a permissible race-neutral justification in the absence of proof that this

(3:08CV2202)

reason was pretextual). Indeed, "[t]he fact that a prosecutor's reasons may be founded on nothing more than a trial lawyer's instincts about a prospective juror does not diminish the scope of acceptable invocation of peremptory challenges, so long as they are the actual reasons for the prosecutor's actions." *United States v. Power*, 881 F.2d 733, 740 (9th Cir.1989) (citation omitted).

Once the defending party proffers a race-neutral reason, the challenging party, who always bears the ultimate burden of persuasion, must show that the explanation is merely a pretext for a racial motivation. *McCurdy*, 240 F.3d at 521. Based on the parties' submissions, the trial court must ascertain whether the claimant has demonstrated purposeful discrimination. *Id.*; *Hernandez*, 500 U.S. at 359, 111 S.Ct. 1859. "In making this determination, the court presumes that the facially valid reasons proffered by the [party exercising the peremptory] are true." *Lancaster*, 324 F.3d at 433. "[T]he critical question in determining whether a [defendant] has proved purposeful discrimination ... is the persuasiveness of the prosecutor's justification for his peremptory strike." *Miller-El*, 537 U.S. at 338-39, 123 S.Ct. 1029. In other words, "the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Id.* at 339, 123 S.Ct. 1029. "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Id.* "Great deference" to a trial court's findings on the issue of discriminatory intent "makes particular sense" because

> [t]here will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Hernandez*, 500 U.S. at 364-65, 111 S.Ct. 1859 (quoting *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)). Thus, "*in the absence of exceptional circumstances*, we would defer to state-court factual findings...." *Id.* at 366, 111 S.Ct. 1859 (emphasis added).

*Braxton*, 561 F.3d at 458-59.

**C. Analysis**

Hopings asserted his first *Batson* objection to the prosecution's use of its peremptory challenge to excuse Juror No. 2, an African-American female. ECF No. 10-2 at 187. Upon

-21-

(3:08CV2202)

stating his objection, Hopings set forth the elements of a *prima facie* case of racial

discrimination, the first required step for a *Batson* challenge.  ECF No. 10-2 at 187-88 (Tr. Vol.

I); *see Batson*, 476 U.S. at 96.  Neither the trial court nor the State Court of Appeals expressly

ruled that Hopings had established a *prima facie* case of racial discrimination and instead, looked

immediately for a race-neutral explanation from the prosecutor.[13]  This preliminary issue,

however, becomes moot "[o]nce a prosecutor has offered a race-neutral explanation for the

peremptory challenges and the trial court has ruled on the ultimate question of intentional

discrimination."  *Braxton*, 561 F.3d at 461 (*citing Hernandez v. New York*, 500 U.S. 352, 359

(1991)).

       The prosecutor's race-neutral explanation and the trial court's finding is documented as

follows:

> [PROSECUTOR]:  . . . .  Judge, I don't believe you can establish a pattern of racial
> abuse by one peremptory.  To protect the record, we'll put on the record what we're
> concerned about is a situation involving this woman's daughter who is currently
> serving time in a penitentiary where she got drunk and cut somebody.  Judge, the
> facts of this case may very well be this defendant got drunk and blew a man's head
> off with a shotgun.  It's very close to her personal life experiences, and to be fair to
> the State and potentially to Juror Number 2, we felt it was best to excuse her on a
> peremptory basis.  I don't believe her answers rose to cause, but because of her
> experience with her daughter we felt justified in excusing her.
>
> THE COURT:  Is there evidence of alcohol consumption in this case?
>
> [PROSECUTOR]:  Yes.
>
> THE COURT:  Anything else?

---

[13]  Review of the transcript in its entirety and the excerpts that follow confirm that the
state trial court employed the appropriate procedures for evaluating a *Batson* challenge.

(3:08CV2202)

>[DEFENSE COUNSEL]: I would simply indicate that she was asked those questions directly by the State. She indicates that she would be able to separate this. She indicated that she didn't feel there was anything that was done unfairly with regard to her daughter. She didn't feel that her daughter had been mistreated or mishandled or misprosecuted in any way. And I still believe that the basis for the State's preemptory challenge exercise as to Juror Number 2 was racially motivated.
>
>THE COURT: All right. Clearly the responses by the juror were concerning her association with the court system. I believe her daughter had appeared - - was it in Judge Doneghy's courtroom? And that she was subsequently violated on community control or probation, isn't that right?
>
>[PROSECUTOR]: Yes.
>
>THE COURT: She has been to the court, been involved with her daughter, we find that the basis for the exclusion is race neutral. We certainly would make inquiry in the future if additional preemptories are used, but under the circumstances of all of the responses by this juror, clearly we do not find that it was based upon race, but a race neutral explanation which the Court accepts. We note your exception, that juror will be excused.

ECF No. 10-2 at 188-90 (Tr. Vol. I).

Upon review of this exchange and pursuant to the Supreme Court's and Sixth Circuit's guidance for giving great deference to a trial court's factual findings, the undersigned finds an absence of clear and convincing evidence that the trial court's finding of no purposeful discrimination in the prosecution's exercise of peremptory challenge was clearly erroneous. Likewise, the State Court of Appeals, after articulating the proper tripartite burden-shifting *Batson* analysis, did not err in its decision to uphold the trial court's finding of a race-neutral peremptory challenge. The record supports the prosecutor's explanations for the peremptory challenge as facially valid, race-neutral and non-pretextual.

Hopings has neither cited nor submitted clear and convincing evidence of purposeful discrimination by the prosecution sufficient to rebut the presumption of correctness to be

(3:08CV2202)

accorded the state courts' conclusion that the prosecutor did not discriminate on the basis of race in exercising the peremptory challenges relative to Juror No. 2.  *See* 28 U.S.C. § 2254(e)(1). Furthermore, Hopings has not presented clear and convincing evidence that the trial court's decision was contrary to or that it unreasonably applied *Batson* warranting a writ of habeas corpus.  *See* 28 U.S.C. § 2254(d).

Hopings second and final *Batson* objection pertains to the removal of Juror No. 5, another African-American female.  *See* ECF No. 10-3 at 60-61 (Tr. Vol. II).  Hopings presented his second race-based *Batson* objection in similar fashion to his first objection — except this time he claimed the racially motivated peremptory challenges had become a pattern.  The trial court held a *Batson* hearing during which it did not expressly rule whether Hopings had established a *prima facie* case of racial discrimination and again allowed the prosecutor to defend by providing a race-neutral explanation.  *See* ECF No. 10-3 at 61 (Tr. Vol. II).  The prosecutor's race-neutral explanation and the trial court's finding are documented as follows:

> [PROSECUTOR]:  Judge, I mean that woman has been a criminal defendant, not only of violence, she has been through that process.
>
> THE COURT:  The issue was self-defense.
>
> [PROSECUTOR]:  And the issue was self-defense.  The other reason, she knows this defendant from childhood and she knows one of the defense witnesses.  I, under the circumstances, I think it's appropriate.
>
> [DEFENSE COUNSEL]:  Judge, I would just simply say in response that she certainly was asked about all of those questions.  She indicates that she has not seen the defendant or a defense witness in some 15, 20 years extended period of time.  She stated unequivocally it would make no difference to her and she would be able to put that aside.  And I think that there are other jurors who have had similar occurrences, not certainly a criminal conviction such as this, but other situations that could give rise to questions by the prosecution.  Those haven't been raised at this point.  I think

-24-

(3:08CV2202)

that it's clear that this is simply based upon racial - -

THE COURT:  We find that there was a race neutral explanation for the excuse. Clearly we find it's appropriate.  We do not find it rises to the level of a Batson exclusion.  We do note that on the jury of 12 we have two African Americans.  We note you exception.  Overruled.

ECF No. 10-3 at 62-63 (Tr. Vol. II).

The undersigned finds an absence of clear and convincing evidence that the trial court's finding of no purposeful discrimination in the prosecution's exercise of peremptory challenge was clearly erroneous.  Likewise, the State Court of Appeals, after again relying upon the proper tripartite burden-shifting *Batson* analysis, did not err in its decision to uphold the trial court's finding of a race-neutral peremptory challenge.  The record supports the prosecutor's explanations for the peremptory challenge as facially valid and race-neutral.  Hopings has not presented clear and convincing evidence that the trial court's decision was contrary to or that it unreasonably applied *Batson* warranting a writ of habeas corpus.  *See* 28 U.S.C. § 2254(d).

The undersigned recognizes that Hopings' trial counsel also asserted the second *Batson* challenge in the context of disparate treatment in jury selection.  "[T]o prove disparate treatment in jury selection, it is not necessary to show that the excluded venire panelist was similarly situated to a white potential juror in all respects."  *U.S. v. Torres-Ramos*, 536 F.3d 542, 559 (6th Cir. 2008) (internal citation omitted).  Upon review of the transcript, the undersigned does not find that African-American potential jurors were excused for reasons for which non-African-American potential jurors were not.

Defense counsel stated, "And I think that there are other jurors who have had similar occurrences, not certainly a criminal conviction such as this, but other situations that could give

(3:08CV2202)

rise to questions by the prosecution.  Those haven't been raised at this point."  ECF No. 10-3 at 62-63 (Tr. Vol. II).  In other words, where "'side-by-side comparisons of some black [potential jurors] who were struck and white ones who were not' shows that the only material distinction between the removed black and the retained white individuals is their race."  Torres-Ramos, 536 F.3d at 559 (quoting Miller-El v. Dretke, 545 U.S. 231, 241 (2005)).

The record does not show there were other potential jurors who knew Hopings or who knew a witness, however attenuated, like Juror No. 5.  Moreover, Juror No. 5 was also a defendant in a criminal trial charged with felonious assault, involving a weapon, who had also asserted self-defense, justifying the use of a peremptory.  Similarly, there were no other potential jurors whose child was involved in a crime similar to the crime for which Hopings was on trial and who had attended court proceedings, i.e., a felonious assault involving a weapon and alcohol.  Thus, there were no other potential jurors, African-American or not, who were similarly situated to potential Juror Nos. 2 and 5 who had not been struck in order to prove disparate treatment.

In sum, Hopings has failed to successfully argue or factually demonstrate, that the decision of the state court was contrary to or an unreasonable application of clearly established Supreme Court law.  Accordingly, Ground Two of Hopings' petition is without merit as the State trial court and State Court of Appeals did not run afoul of Batson and its progeny.

## V.  **Conclusion and Recommendation**

Based upon the foregoing analysis, the undersigned Magistrate Judge finds that Grounds One and Three of Hopings' petition for habeas corpus relief are not cognizable in federal habeas corpus as well as procedurally defaulted and, Ground Two lacks merit.

-26-

(3:08CV2202)

For the above stated reasons, the undersigned recommends that the petition of Lamonte

B. Hopings, Jr. for a writ of habeas corpus be dismissed in its entirety with prejudice.


November 25, 2009                                     s/ Benita Y. Pearson
Date                                              United States Magistrate Judge



**OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-27-